## Foodarama's Zoning Application: Appeal of Neff and Kaiserman.

Argued May 5, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Milton S. Lazaroff,* with him *Techner, Rubin & Shapiro,* for appellants.

*Arthur Lefkoe,* with him *Lefkoe & Beeghley,* for appellee.

OPINION BY JUDGE ROGERS, August 13, 1971:

We are required in this zoning case to decide the question of which of two provisions of a township zoning ordinance is controlling of the number of parking spaces necessary to be provided in the construction of a supermarket.

In the year 1958, George W. Neff and Kevy K. Kaiserman, intervenors herein, acquired a parcel of land containing about nine acres in Plymouth Township, Montgomery County. The tract fronted on Germantown Pike, a principal thoroughfare of the township, for a distance of about 590 feet. In 1960, a zoning ordinance was adopted by the township supervisors which placed the frontage of intervenors' parcel of land to a depth of 200 feet in a district in which commercial uses were permitted. In 1961, the ordinance was amended so as to locate the frontage to the depth of 365 feet, comprising about four acres of land, in a district called Shopping Center,[1] the pertinent provisions of which are:

"ARTICLE XI. Shopping Center Districts.

"In the Shopping Center Districts the following regulations shall apply:

"SECTION 1100. USE REGULATIONS: A building or combination of buildings may be erected, altered or used, and a lot may be used or occupied, for any of the following purposes, and no others:

"A. Retail Store . . .

. . . .

"SECTION 1101. DEVELOPMENT REQUIREMENTS . . .

. . . .

"F. Off-Street Parking and Loading Space Requirements:

"(1) The following regulations on off-street parking spaces and loading space requirements shall apply to Shopping Center Districts and shall be in lieu of the requirements specified in Section 1700.

"(a) The parking and loading spaces shall be physically separated from public streets.

---

[1] The balance of the nine acres was included in a residential district, as was also all other land adjacent to the four acres here involved.

"(b) The size of a parking space for one vehicle shall consist of a rectangular area having dimensions not less than eight feet six inches (8'6") wide and eighteen feet (18') long.

"(c) Parking spaces may consist of enclosed areas such as basements, attached or detached garages, or open space parking areas including open lot, deck and roof parking areas.

"(d) The front, side and rear yards may, subject to the provisions of Paragraph B of this Section 1101, be used for parking and loading space.

"(e) The land upon which the off-street parking and loading spaces are located shall be owned or controlled by the same entity which owns or controls the land on which the principal use is located unless the conditions of Section 1701 are met or unless the Shopping Center consists of a Lot as defined in Paragraph A of Section 1103.

"(f) Required parking spaces for individual establishments need not be provided separately but may be made a component part of such space jointly serving two or more establishments.

"(2) Required Parking Spaces:

"(a) Off-street parking and loading spaces shall be provided in accordance with and as an integral part of the plan.

"(b) Off-street parking spaces shall be provided in accordance with the following schedule:

"1. Retail Stores, Personal Service Shops, Studio, Financial Institution, Restaurant, Eating Establishment, Cafe, Theater, Skating Rink, Bowling Alley, Billiard Room, indoor recreational establishment and other commercial establishments—one (1) parking space for every two hundred (200) square feet of rentable floor area."

Intervenors agreed to sell the four acres more or less within the Shopping Center District to the appel-

lant, Foodarama Supermarkets, Inc., subject to the condition that a supermarket might be constructed thereon. The ordinance established a 10-acre minimum area for any use in the Shopping Center District but authorized the grant of special exceptions for permitted uses of undersized lots held in single and separate ownership at the time of the enactment of the zoning regulations, upon submission of evidence of the fact that the smaller lot area would provide safe and effective sanitary sewage disposal if the land was not served by sanitary sewers. The lot here was served by sanitary sewers. Foodarama Supermarkets, Inc., applied for the special exception to construct a 30,200 square foot supermarket, exhibiting a plan including a provision of 261 parking spaces. The zoning hearing board denied the exception on the grounds, first, that a supermarket at this location would overcrowd the land, cause traffic congestion and be detrimental to the appropriate use of adjacent property and, second, that insufficient parking spaces were provided. As to the second ground, the board concluded that Article XI, Section 1101, F (2) (b) (1) *supra,* requiring in a Shopping Center District one parking space for every 200 square feet of floor area for use of property as a retail store did not apply but that another provision, Article XVII, Section 1700, D (2), requiring one parking space for every 50 feet of stores sales floor space, did. Under the former provision, the appellant would be required to provide about 150 spaces and under the latter about 600. The lot cannot accommodate 600 spaces and a 30,200 square foot store. Article XVII, Section 1700 is as follows:

"ARTICLE XVII. Off-Street Parking and Loading—Section 1700. Required Off-Street Parking Facilities.

"Any building or other structure erected, altered or used, and any lot used or occupied, for any of the following purposes shall be provided with minimum off-

street parking spaces as set forth below, together with adequate passageways, driveways or other means of circulation and access to and from a street or way;

"A. Dwelling: one (1) all-weather parking space per family on the same lot therewith, provided that in any D Residential District for any dwelling other than single-family or two-family the required space need not be located on the same lot if situated within three hundred (300) feet of such dwelling.

"B. Rooming House Dwelling: one (1) all-weather parking space for each room for rent, on the same lot therewith or on land adjacent thereto.

"C. For any of the following uses the required parking spaces shall be all-weather and shall be located on the same lot therewith or on land adjacent thereto:

"1. Church, School, Public Auditorium, Assembly or Meeting Room, or other similar place of public or private assembly; one (1) parking space for every five (5) seats provided for public assembly.

"2. Stadium or other similar place of assembly; one (1) parking space for every five (5) seats.

"3. Hospital, Convalescent Home or Sanitarium: one (1) parking space for every four (4) beds.

"4. Community Center, Library, Museum, or other similar place: one (1) parking space for every eight hundred (800) square feet of floor area in public use.

"5. Institutional Home: one (1) parking space for every ten (10) occupants.

"6. Club: one (1) parking space for each two (2) resident occupants, plus ten (10) parking spaces for every one thousand (1000) square feet of floor area in active use.

"D. For any of the following uses the required parking space shall be all-weather and shall be paved, and such parking spaces shall be located on the same lot therewith except as provided in Section 1701 below.

"1. Retail Store or Shop: one (1) parking space for every one hundred (100) square feet of store sales floor space.

"2. Department Store or Supermarket: one (1) parking space for every fifty (50) square feet of store sales floor space.

"3. Indoor Theatre: one (1) parking space for every five (5) seats.

"4. Hotel, Apartment House, Tourist Home, Automobile Court: one and a half (1½) parking spaces, consisting of two hundred (200) square feet, for each rental unit excluding passageways and other means of ingress and egress.

"5. Office Building or Wholesale Establishment: one (1) parking space for every two hundred (200) square feet of ground floor area, plus one (1) parking space for every four hundred (400) square feet of floor area above the ground floor.

"6. Restaurant, Cafe or Tea Room: one (1) parking space for every fifty (50) square feet of floor space devoted to patron use.

"7. Laboratory or any Industrial Establishment: one (1) parking space for every three employees.

"8. Other Commercial Buildings: one (1) parking space for every one thousand (1000) square feet of floor area, or fraction thereof, except when otherwise authorized as a special exception, consistent with the requirements set forth herein for comparable establishments.

"9. Open Areas Used for Commercial Purposes: one (1) parking space for every fifteen hundred (1500) square feet of area or fraction thereof."

Foodarama, Inc., appealed the board's decision to the common pleas court which reversed the board, granted the special exception but remanded the case to the board for further consideration of any reasonable conditions to be imposed, adding: "In this regard, it is

Ordered that the applicant comply with Article XVII, Section 1700, D(2) . . . as to parking requirements."

A review of the Ordinance impels the conclusion that the court below erred with respect to the requirement of parking spaces and that the less onerous requirements specifically applicable to the Shopping Center District are those to which appellant must conform.

It is clear to us that the ordinance provides that the parking regulations applicable in the Shopping Center District and, therefore to this property, are contained within Article XI, and particularly Section 1101 (2)(b)(1) *supra.*

First, the opening phrase of Article XI reads, "In the Shopping Center District the following regulations shall apply." There follow, if our count is correct, 82 sections, subsections, clauses, and subclauses, regulating in great detail the establishment of any use in this district. Fifteen of these deal with off-street parking and loading, in quite as comprehensive a fashion as the regulations of Article XVII, Section 1700. There are a total of 12 zoning districts provided by the ordinance. In none of the separate articles establishing and providing regulations for these districts, except in Article XI, is the number of parking spaces ordained. It is obvious that Article XVII was to supply parking regulations for the districts other than Shopping Center.

Second, Section 1101F(1) contains the phrase, "The following regulations on off-street parking spaces and loading space requirements shall apply to Shopping Center Districts and shall be in lieu of the requirements specified in Section 1700." There follow six lettered subsections, (a) through (f), the subject of none of which is dealt with in Section 1700. On the other hand, the subject matter of Section 1101F(2), Required Parking Spaces, is the *only* matter dealt with in Section 1700. If the requirements of Section 1101F were to be in lieu of anything in Section 1700, they were in

place of the parking space requirements, including that of Section 1700D(2) relating to supermarkets. To read the two sections in their entirety otherwise would create a direct conflict in parking space requirements with reference to retail stores, offices, apartment and other commercial uses, contrary to a legislative directive that we construe statutes so as to give effect to all their provisions. Statutory Construction Act, 1937, May 28, P. L. 1019, Section 51, 46 P.S. 551.

Third, it is noted that a supermarket as such is not included as a permitted use in the Shopping Center District. The zoning board and court below correctly considered the supermarket proposed by appellant as within the category of retail store, permitted by Section 1100A. Being a retail store for this purpose within the comprehensive regulations of Article XI, it was implausible to hold that it was not a retail store for all purposes within the same article.

Lastly, the zoning map and ordinance place only four of appellants' nine acres of land within a district in which a ten-acre lot area is required. The imposition of parking requirements drawn from an article of the ordinance of general application which thwart the use of this land for a permitted purpose would seem to be contrary to, rather than consistent with, legislative intent.

The judgment of the lower court insofar as it directs appellant to comply with Article XVII, Section 1700, D, 2, of the Plymouth Township Zoning Ordinance of 1960 as to parking requirements is reversed; said order is otherwise affirmed, including its remand of the record to the Zoning Hearing Board for consideration of such reasonable conditions and safeguards as it may deem necessary as provided by Section 913 of the Pennsylvania Municipalities Planning Code, 1968, July 31, P. L.     , No. 247, 53 P.S. 10913.

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent. I cannot agree with the majority that the parking regulations for this *supermarket,* which incidently is located in a shopping center district instead of another commercial district, are those governing *shopping centers* instead of those governing *supermarkets.* It is clear that shopping center regulations have been drafted with consideration for multiple uses and sharing of facilities normally attendant thereto, and were not intended to assist single uses within the shopping center district to which the reasoning behind the shopping center regulations is clearly inapplicable. As was stated by the court below: "Such a determination . . . would neither be good law nor good logic."

Section 1100 of the Plymouth Township Zoning Ordinance defines uses permitted in shopping center districts—including among others, "retail stores". Therefore, the requested use is permitted within that district. It is Section 1101 setting forth "Development Requirements" in shopping center districts which is the topic of this controversy. A thorough reading of that section clearly shows that it was intended to regulate the development of shopping centers—"a harmonious selection of uses and grouping of buildings, service and parking area, circulation and open spaces, planned and designed as an integrated unit, . . ." As such, Section 1101 provides building and other specific requirements for uses within the district in the same manner that other sections of the ordinance provide similar provisions for other use districts. However, Section 1102 goes further to provide special regulations exempting shopping centers, because of their very nature, from regulations otherwise applicable throughout the township. In this manner, Section 1101(F) deals with parking.

Since single retail stores are permitted within shopping center districts, and since Section 1101 is the only regulation of development in that district, requests for

retail stores must comply with Section 1101. However, this does not mean that the more liberal requirements that Section 1101 provides for shopping centers vis-a-vis uses in all other districts are applicable to the single store merely because it exists in a shopping center district.

While the failure of the ordinance to provide specific requirements of set back, ground coverage, height, etc., for single stores situated in shopping center districts dictates that we must apply Section 1101; the fact that Section 1101 was not intended for single uses dictates that we apply the township wide provisions generally applicable to the requested use where Section 1101 provisions are in conflict therewith. As stated by the court below: "What can be more logical and clear than to simply apply that specific provision of the Zoning Code for parking spaces of a supermarket when it is undisputed that a supermarket [and only a supermarket] is to be built."

In addition, I cannot agree with the majority that Section 1101(F)(1) in providing that the subsections thereof shall be in lieu of Section 1700, provides that the parking space number requirements in 1101(F)(2) shall also be in lieu of those in 1700. Judge Vogel in his opinion below, correctly analyzed this question as follows: "It is obvious that the applicant is attempting to bundle the phrase 'in lieu of the requirements specified in Section 1700' seen in (F)(1) to encompass (F)(2) as well. This is not so. It should be clear that if the framers of the Ordinance meant that with respect to shopping centers the regulations as to off-street parking were to be 'in lieu of the requirements in Section 1700', they could have accomplished such a result, thereby encompassing both (F)(1) and (F)(2), by inserting that language after the title of Section (F) of Section 1101 rather than a subsection (F)(1) whereby it

became restrictive to those provisions (a) to (f) which immediately followed.

"Section 1101(F)(2) is separate and distinct from (F)(1)."

I would affirm the order of the court below without modification.